## THE ROCHESTER.

### THE AMARETTA MOSHER.

### DUNHAM v. THE ROCHESTER.

(District Court, N. D. Illinois. March 1, 1897.)

COLLISION—STEAMER AND SAIL—LOOKOUTS.

Where a schooner, shortly after leaving port, collided with a steamer coming in, *held*, on the evidence of the probabilities of the case, that the collision was due to the fact that all the schooner's crew, except the master at the wheel, were engaged in setting sail, and that, the master's vision being obstructed by the sails, he several times left the wheel to play at random, while he ran forward to observe the approach of the steamer, and that the consequent yawing of the schooner then misled the steamer into the belief that the schooner had changed her course.

These were cross libels to recover damages resulting from a collision.

Charles E. Kremer, for libelants.

George S. Potter, for claimant.

GROSSCUP, District Judge (orally). On the evening of November 4, 1895, at about 8:30 o'clock, the schooner Amaretta Mosher, belonging to the libelants, and leaving this port and the steamer Rochester coming into this port, came into collision when about two miles off shore, and about seven miles from the mouth of the river. The schooner had no cargo of any consequence, and carried seven men. The steamer was partly loaded. The wind was from the south; the night was clear; and the course of the schooner was almost before the wind. This case presents the usual difficulties of collision cases. The collision itself is, to a certain degree, unaccountable. The schooner was proceeding northward, a point or a point and a half to the westward. The steamer was proceeding southward several points to the eastward when they sighted each other. If the story of both crews be assumed to be true, they were in such a relation to each other that, if they had maintained their then course, the steamer would have crossed the bow of the schooner, and been to the eastward of her, in ample time to have avoided any trouble. But it appears that, just before the collision occurred, the steamer, for some purpose, changed her course from eastward of south to a little westward of south, and that near about the same time the schooner apparently changed her course from westward of north to a little eastward of north, and the collision occurred by reason of these changes of the direction of either both of the vessels or of one of the vessels. The witnesses on board the steamer insist that they were proceeding to the eastward of south, and were on the starboard side of the schooner, seeing her green light, when suddenly the red light of the schooner appeared, showing that she had changed her course, and was coming in their direction. Under the rules of navigation, it is the duty of the steamer to give the highway to sailing vessels. In obedience to this rule, she ported her helm, and attempted to pass to

the westward of the schooner, although her normal direction was to the eastward.

The crew, on the part of the schooner, insist that they saw the steamer in ample time; that they saw her crossing the schooner's bows; and that, suddenly, and without any change of her own course, they observed that the steamer had changed her course, and was coming down upon them. Now, there are two theories advanced for this singular conduct upon the part of the steamer. The one is, on behalf of the schooner, that, as a matter of fact, the steamer did not sight the schooner until she was just upon her; that she then saw her green light, it is true, and the change from the green light to the red light, which indicated a change in the course of the schooner; that this, in fact, was not a change of her course, but was only due to the fact that she was yawing,—that is, her bow was veering from right to left, whereby she showed first one light, and then the other; but that the steamer was so near upon her that her master had no time to stop and deliberate, and, not distinguishing between yawing and a change of course, suddenly changed his course, which brought him into direct collision with the schooner. On behalf of the steamer it is contended that this cannot be true, but that the schooner leaving port had engaged all her men at work setting sail, and that this included, for the most part of the time, the lookout, whose duty it was to stand upon the deck of the vessel, and that the master who was at the wheel, in the rear of the vessel, and whose vision was obstructed to a great extent by the sails, was the only one who was on the lookout; that it was suddenly seen that the steamer was close to her, and was passing across her bow; that the master, for the purpose of ascertaining what the steamer's course and intention was, left the wheel, and ran to the fore of the cabin, and looked at her under the sails; that he did this not once, but twice or three times; and that, when he was doing this, the wheel was necessarily playing at random, and leaving the schooner to take her course at random; and that it was the abandonment of the wheel which caused the schooner to appear to the steamer to have changed her course to the eastward.

As I say, if I took the direct testimony of the witnesses in this case, and attempted to be guided by their testimony alone, I would come to a disagreement. My best judgment is, looking at it from all the circumstances connected with the case, that the better reasoning is with the theory propounded by counsel for the steamer. I must presume that the steamer did not purposely run down the schooner. The further presumption that she was upon her before she knew it, and mistook these changes of lights for the mere yawing of the schooner, is ingenious, and may possibly be true, but it is not what the truth naturally would be. On the contrary, the master of the schooner admits that he left his wheel several times to go forward and look under the sails at the steamer. He also admits that the crew stopped work on the sails, and grew excited, when they saw the steamer was yawing before the collision. My own impression is that the schooner was without any lookout except that of the captain, and that the captain's disadvantageous situation obliged him

to leave the wheel, and thus to indicate to the steamer that she was changing her course, which would be the fault of the schooner. A decree may therefore be entered finding the schooner at fault, dismissing the libel, and sustaining the cross libel.